The government states in its brief that, and I quote, no one disputes the requirements of the Fifth and Sixth Amendments in their role in regulating the division of labor among the judge, jury, and prosecution. In fact, that is exactly what the issue in this case is all about. Ever since Louisiana v. Sullivan, at least, the Supreme Court has held repeatedly that where a defendant has a right to the determination beyond a reasonable doubt of the facts in his case by a jury of his peers, that no matter how overwhelming evidence might be, whatever the quantum of the evidence might be, the judge simply cannot substitute his finding for that of the jury, but must instead submit the matter to a jury for determination. The case before the court, the appellant's opinion, is controlled by United States v. Gowden, a 1995 Supreme Court case in which the court took from the jury the determination of materiality, which was an explicit and express element of the crime of making false statements on a federal loan document. Now, was an element here taken away from the jury? Well, functionally, yes, Your Honor. What do you mean by that, functionally? I admit that the elements of the crimes of which the defendant were charged do not include on their face the element, the idea that the underlying liens in the case were invalid. And, in fact, the government tries to distinguish Gowden on those very grounds. But it's functionally indistinguishable from Gowden. And the analogy I would use would be, if the element of a crime were that it had been committed on New Year's Day, and the court instructed the jury that a week before the acts in question had been Christmas, it would be the same effect as here. Even though the fact that a week before was Christmas is not an element of the crime in my hypothetical, it flows ineluctably and unmistakably from that fact that the element of the crime that it was on Christmas Day, that it was on New Year's Day, was in fact satisfied. How does that fit this case? What is it that was instructed that leads inevitably to one of the elements? Well, it may be a failure of imagination on my part, Your Honor, but while I can imagine how a properly instructed jury might find that the liens were valid, but find that the notes were nonetheless false and fictitious, which is one of the arguments the government makes in its brief, but it is impossible, at least for me to imagine, how the jury could follow the court's instruction that the liens were in fact invalid, and yet go on and acquit the defendant by finding that the notes were not in fact false and fictitious. Well, I confess I have trouble seeing how the jury could have reached a different result, too, but that's not because of the instruction. It's because these notes weren't what they on their face appeared to be. Isn't that the problem? I don't believe that that is the problem, Your Honor. I think the notes were exactly what they purported to be. The question was whether that means anything and whether it has any criminal significance. Defendants were quite straightforward about what they intended to do, and they were quite straightforward about their interpretation of the law and the application to the facts of what acts they performed and what the result of that should be. The court took it upon itself to determine how the defendants ought to defend the case very early on. Well, you said earlier that, you know, the court's instruction or its holding about being invalid, legally invalid was function functionally equivalent to an element. Which element are you talking about? The element of false and fictitious, false and fictitious. That's correct. So it's an element of the offense that the notes had to be jury had to find that they were false and fictitious. Right. That's correct. What does that mean? False and fictitious. False and fictitious. As I understand the law and how I can other cases is that there's something other than what they purport to be on their face. And I don't think these notes were anything other than what they purported to be on their face. The question was whether they were on their face. It says that John Nolan is the agent and fiduciary of Jackson National Life Insurance Company. There's specific evidence that he was not the fiduciary of Jackson National Life Insurance Company. That's fictitious, isn't it? The fact that there could be some fictitious, some fictitious or incorrect statements on the face of the note, I don't think proves that the note as a whole was fictitious. Well, his signature is what's purporting to make it valid. And this is the only signature that appears there. Right. But the testimony of the defendants was that the notes were valid because they derived from an involuntary lien, which had been levied against Jackson National Life Insurance. And this was such an unusual and unfamiliar. It says he's the fiduciary of Jackson National Life Insurance Company. And there's evidence that's not true. Well, the fact that there may be evidence in the record, this case is not about whether there is sufficient evidence in the record from which a properly instructed jury could find. What I'm saying is the judge's instructions are irrelevant to that. The jury could find this is false and fictitious because he's purporting to sign on behalf of Jackson National Life Insurance Company. And he didn't have that authority. The jury could find that the jury could assess the evidence and disbelieve everything the defendant said and accept all of the prosecution's witnesses and applying the law as properly given to them by the court could, in fact, make such a finding. But that's not what this case is about. This case is whether the jury had a chance to do that and the jury did not have a chance to do that because they were told these liens are invalid. Therefore, they had no choice but to find the paper that was based upon those liens had to be false and fictitious by definition because they were based on nothing. And insofar as they purported to have any value, they could not have had value because they were based on a castle of sand. Now, a jury might have found properly instructed that it was a castle of sand that the defendants had erected, but they never had that chance even taking it from your point of view. Isn't it a matter of law as to whether the liens were valid or not valid? The question is, what was the law regarding the creation of liens and how did it apply to the acts that were actually performed by the defendants and what were those acts? All those things go into a determination of whether the liens were valid or not. And that is a mixed question of fact and law. All the jury has in front of it in the courtroom is the testimony and evidence before it, which ordinarily they're free to accept or reject as they will. Instead, however, they were simply told by the judge, I don't really care what happened. You don't really care what happened out there. And this is after days of unobjected to testimony and statements regarding any way that these liens could be valid. Is there any way that they could be? I don't know that, Your Honor. I just know that you're here to tell us why, as a matter of law, these liens are not invalid. Tell us your point of view, why they could be valid. Well, Your Honor, I don't know the ancient law that's cited by Mr. Van Dyck. I haven't studied the law, the ancient Jewish commercial law, and I don't know the common law. We know that ancient Jewish law can have no effect here in the United States. Well, insofar as it's part of the common law, Your Honor, I was not aware that the common law had been abrogated by the enactment of all federal statutes. But even that, even that is a matter of law, is it not? What law does apply here? That's a matter of law. That's not for the jury. That is, in fact, true, Your Honor. And the court could have instructed the jury as to what the common law is, what the law of the state of Oregon is, state of Washington, state of Michigan, could have instructed them any of those things. But instead, he simply took the determination away from the jury and the jury's right to apply that law. You've been unable to say how conceivably these could have been valid liens. That's a matter for the trial court, Your Honor. The question before us... Well, no. You're here to tell us why the trial court was wrong. The trial court was wrong because it did not... Two reasons, Your Honor. First, it did not instruct the jury as to what the law was, whatever it may be. That's not before this court now, but whatever it may be. So it could... He instructed that the liens weren't valid. Period. All right. And why are they? Why was that wrong? Your Honor, with all respect, I believe that that is a determination for the jury to make after it finds what facts the defendants engaged. And I think truly that the court is falling into the same trap that the trial judge and the prosecution fell into, which is that if something appears to be novel, if something appears to be different, then it simply is not anymore for a jury's determination. Let me ask the same question, maybe a little bit differently. In other words, what you're saying is it wasn't the court's prerogative to determine whether or not the liens were valid or invalid. It was the defendant had a right to have the jury make that determination. Right. The defendant had the right to be instructed on the proper law. So you're sort of drawing an analogy to Gallatin, right? Right. Now, and this is my question. Let's assume, you know, we agree with you on that. It's close enough to Gallatin. So we apply Gallatin. Now, if that's true, and this is, I think, maybe sort of Judge Clifton's question. Also, isn't that a harmless error? Because the evidence is so overwhelming. Your Honor, I don't believe that under Louisiana versus Sullivan in the cases, if a matter like this is taken from the jury's determination where it belongs, that it can be harmless error, especially in light of the case cited by the State. One particular case in which the Court specifically holds in a very analogous set of facts, and I believe it's Stanton versus Bensler, that one reason that it could be harmless error in that case was because the jury retained its ability to engage in jury nullification, essentially. And because the Court, sua sponte, instructed in this case, even without a request, that there would be no jury nullification. Are you saying part of the right to jury trial is the right to nullification? I'm, these are all slippery matters, Your Honor. But certainly, there's no instruction, but there's no, I don't know of any court that has ever gone out of its way, when it's not actually before the jury, to instruct that the jury has no right, no power to engage in jury nullification, as this Court did. It simply channeled the jury even further into a feeling that it had no- Is that your argument now, that this instruction amounts to an anti-nullification instruction? No, there was an anti-nullification instruction, Your Honor. This instruction is different. This instruction is announced to a directed verdict on one of the elements of the offense. Let me change the subject, and just see if you have a position. It's on your other argument with regard to sentencing. Yes, sir. Now, you're dealing with a shifting landscape of the law with regard to sentencing. At the time that your briefs were filed, you were arguing under Blakely. We're now in the Booker world. We're all still waiting to find out what our circuits take on that is. But Ameline 1 would suggest the likelihood of a case being sent back for resentencing, if the defendant wants to press the issue. I think that's a pertinent question in your case, because as I understand it, your client was sentenced at the top of the guidelines range. And if he requests resentencing, and our circuit decides to go that direction, he runs the risk of being sentenced to more severe terms. And so I'm putting to you now, and if you don't have an answer today, you can get an answer back to us perhaps in writing, does your client still want to pursue a request for resentencing, recognizing that it could lead to a higher sentence? My understanding is that he does, Your Honor. I know this is not before the court, but I want to respond. My client has spent a lot of time in solitary confinement in Minnesota, and I've had some difficulty communicating with him about that, as well as other issues. My understanding is that he does and has a right to have reconsideration of the guidelines. I understand the danger. We're waiting for what our en banc panel decides with Amelain. But if the original three-judge panel decision would remain in place, it would appear that your client would have a pretty good case for arguing he's entitled to resentencing. But that imposes some risk. So that your client ought to be entitled to make that decision and advise us as to whether he wants to press the issue when the law becomes clear. And we're going to have to deal with that somehow with lots of cases. If your client hasn't been able to speak to that issue so far, you haven't been able to communicate with him, you might want to start efforts. I haven't actually spoken to him, and his letters have been on different topics. I may ask the court to set a time by which it needs to hear from me, one way or the other, if at all. We're going to have to devise an approach for everybody. Depending on what the en banc panel and Amelain decides, we're going to have this. But I know you pressed the sentencing issue. The situation may have changed. I just say you might want to start communicating with your client so that he can consider his options. Because when the time comes, you're probably going to be required to speak. I have done those things, Your Honor. I will renew them, my understanding at the present, unless the court hears otherwise, as my client does want the relief requested. Thank you. Thank you. Your Honor's counsel. I've got Karen for the government, the appellee in this case. Judge, if I could start. There is absolutely no way that these things can be valid. That's the crux of this issue. The issue really is whether after that instruction or was that on the validity or invalidity. It sort of happened in a two part. Originally, the government did not ask for an instruction that these liens were in fact invalid as a matter of law. Judge Jones brought up on his own. And I believe it started to happen in the second day of trial. And eventually, I believe he made a ruling for the beginning of the third day of trial, where he started instructing the jury. It originally came up with sort of a question that he posited to the government that I am of two minds on this. One is to send it to the jury. The issue of these liens. The other was to just rule as a matter of law. The first government took the position of send it to the jury. Judge Jones reacted with what I would say. Basically said, I can't think of any way that these could in any way be valid. Well, I'm inclined to instruct as a matter of law. Well, why is it that Judge Clifton said earlier? Well, you know, whether or not the liens are valid is irrelevant, isn't it? It's a question. The issue is whether they're false and fictitious. Correct. So how did this? So my question, how this business about invalidity ever come up and why? I don't understand it. I believe the invalidity came up as a argument on the intent to defraud. Whose argument? Yours. Our argument that whether or not these liens were valid was a factor that the court or the jury could look at in terms of deciding whether or not there was an issue of intent to defraud here. Not that these were, in fact, fictitious. I mean, fictitious is simply that you have a document that is, quote unquote, unreal. And that's what Howard case talks about out of the Ninth Circuit, that when 18 USC 514 was enacted, it was designed to close a loophole that they did not believe that counterfeiting touched comptroller warrants, things that were made that were just flat out. I think how it called them bogus documents. And that's what these were. And that was the issue that the jury was instructed on. Did the defendants either make, produce, utter fictitious instruments? And fictitious was defined to the jury to be documents that, in essence, were not real. Oh, but you see, if you turn to your other argument, when you say, well, these are invalid, you're saying as a matter of law, they're fictitious. They're bogus. Doesn't that take the issue away from the jury? It does not, Your Honor. Well, what is there? In other words, you see, it seems to me it's possible. Well, it's not possible for a valid document to be bogus, is it? No. Sure. So and on the other hand, it's not possible for an invalid document not to be false, is it? An invalid document not to be false. No, I don't think so. So isn't it, as Mr. Wepner says, I mean, virtually or functionally the same as, you know, taking an element away from the jury? You're telling me, well, this is invalid. Invalid has to be false and fictitious. So this is false and fictitious. I don't understand why he did that. And I think, Your Honor, if I can, there's really two issues. I mean, we sort of have to separate this issue a little bit. For the sake of argument, assume that these liens were in fact valid, that old Jewish commercial law somehow trumps Washington law and statutes on point, and that these liens were in fact valid. Would it have mattered in any way? Just because there was a quote unquote lien out there in no way justifies someone writing or making currency that purports to be issued under the authority of the United States or Jackson National Life. So Judge Jones did not instruct them, I am telling you that these documents are false and fictitious. What he did is a step removed from that. He said, they are making a lot of claims about these purported liens that they enacted. I am instructing you as a matter of law, which was solely within his province to do, that these liens are not valid as a matter of law. And he was amply supported by the record in doing that. Here, especially with Mr. Question is not whether he supported by record. The question is whether it's his prerogatives to do that, because is there an issue about validity? I don't think so. You know, no one has to find that they're valid or invalid to obtain a conviction. Right. So but if it has an impact on the determination of the jury's job of finding whether or not it's false and fictitious, then it's prejudicial to the defendant. I would disagree, Your Honor. Well, first of all, there is no issue of validity, right? That's not a required element of the of the crime. It's just like, you know, in this case, in this case, you didn't have to find counterfeit, right? Because that's not an element of the crime. No, this is not. You have to define valid because it's not an element of the crime. But it does have to find that these are false and fictitious documents, that these documents are unreal documents. And that's what the jury found. And the jury has to find that these documents, these public wealth rebate notes, these drafts and these Nolan notes are, in fact, unreal documents. They were not issued by or under the authority of the United States government or Jackson National Life. Now, that part is an element. However, whether or not there are these, quote unquote, liens is not an element. That is a step removed, Your Honor. It's a step of what? I would say it's a step removed. For example, Mr. Wepner gave this analogy of if there was a crime that said an element was that it was committed on New Year's Day. And he gave an analogy of could the judge instruct that Christmas was a week before. Under this analogy, it would be similar to a defendant making, if that was an element, that it had to be committed on New Year's Day. The defendant gets up and says, New Year's Day does not exist. Well, could the judge step in and say, hey, it's a matter of law. There is a thing called New Year's Day. You decide, jury, whether or not a crime was committed on that day. I don't think you should do that. I mean, the jury could figure that out. It's the jury's function. The Ninth Circuit, I believe. That's not a matter of law you need instruction on. It's just a matter of, you know, something everybody knows. I disagree with that completely. You should instruct the jury on something like that. Well, how about in Ampro, Your Honor? I think the Ninth Circuit took a different view. In Ampro, Your Honor, was a situation similar to how defendant is arguing, or appellant is arguing in this case. In Ampro, an element of count two of that charge, the defendant was charged with two crimes, possession of a sawed-off shotgun and possession of a firearm, either in connection or in furtherance of a crime of violence. In Ampro, which is still, I believe, good law in the Ninth Circuit, the judge instructed, I am instructing you as a matter of law that possession of a sawed-off shotgun is a crime of violence. The potential problem that I see here is that the judge's instruction wasn't purely legal. He didn't say unless somebody has the authority to sign, the lien isn't valid. He said these liens aren't valid, which all of us know to be true because we live in this world and not in the world of the defendant. But his instruction does encompass a factual element that it could be argued and has been argued. It's really for the jury to put together. My sense of this is that in the face of a pro se defense that kept, presumably because of motivation and intent, wandering back to defendants' professed belief that what they were doing was appropriate in their world, the judge couldn't stand it anymore. And frankly, I don't know that I could have stood it anymore either after hearing it. But the problem we have now is whether by putting the two pieces together, that is that Mr. Nolan doesn't have the authority to sign on behalf of the insurance company and that these ancient Jewish and British and whatever other laws don't apply today, the judge winds up saying these notes aren't valid. What's your take on that? I don't believe the judge ever instructed, and I don't believe his instruction overreached the sense of saying that these documents before you are necessarily by themselves false and fictitious. I believe Judge Jones, while certainly I think he was confronted with unique circumstances of pro se defendants, and he was trying to focus, I think, this trial and also help these defendants during trial, that his instruction, I believe, was narrow enough to say that these, quote-unquote, liens, liens that in fact were invalid, liens that in fact had a filing in the Kings County Recorder's Office. See, you're talking about these things, you know, in fact being this and in fact being that. And it's not appropriate to say it's a matter of law. It's this if it's a matter of fact. Well, taking a slightly different point of view, there was the instruction had to do with the liens, as I understand, only the liens. Correct. So conceivably the defendants in this case could have believed they were valid and if they had not made other misrepresentations, making fictitious notes, the question of whether they were based on a valid lien or not would not really mean that the judge is instructing that the notes were not valid. He's saying that the liens themselves were not valid. Now, maybe there's still a question of whether the intent of the defendant was to pass notes that he believed was based on a valid lien. Your Honor, I know my time has expired, but that is absolutely what happened here. Judge Jones went out of his way to instruct that these could still factor into whether or not they had the intent to commit the crime, which was an essential element, the intent to defraud. And as such, I believe he was well within his authority to instruct on a purely matter of law that was not in dispute, the facts were not in dispute, but as a legal matter that these were invalid liens, period. Thank you, Your Honors. Thank both counsel for their argument. The case just argued is submitted. And we'll move to the next case in the calendar, which is Culley versus Lambert. Thank you.
judges: Hug, Tashima, Clifton